[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above matter is before the undersigned as a result of an agreement between the parties for binding arbitration. On November 27, 1994, the plaintiff Mary O'Brien was injured in a one car accident while a front seat passenger in a vehicle driven by the defendant Thomas F. Mazziotti.
Mrs. O'Brien claims that Mr. Maziotti was at fault for the accident whereas Mr. Mazziotti denies that he was at fault and contends that he was exercising reasonable care, in fact extra caution, at the time of the accident and that this was a classic "unavoidable accident." Specifically, Mazziotti contends that this accident resulted from hazardous winter weather and road conditions in the midst of an early season snowstorm, on an unfamiliar hilly and winding narrow county road, when his vehicle without warning slid on the slippery road surface as he was, entering a curve and downhill stretch, from which he was not able to regain control of or slow the vehicle despite exercising all reasonable efforts to steer and brake the vehicle. The defendant claims that he was only going 15 miles per hour at the time of the accident when he-struck the steel guard rail on the easterly side of Salmon Hill Road in the Town of Salisbury.
The evidence, however, does not support the defendant's claim. The police report states in part: CT Page 1450
 OP.#1 southbound on Salmon Hill Road approaching a bridge on curve. Veh #1 skidded on snow covered road unable to make curve striking guard posts prior to bridge. OP.#1 stated that he was unaware the road surface was so slippery. That he was unable to negotiate the curve because of the snow on the road.
 An examination of the scene revealed a snow covered road with a 4WD Jeep into guardrails off the S/B lane. Damage to Veh.#1 was a dislocated rear axle and minor left front fender damage. Broken drive shaft. Approximately 10 feet of guard rails were heavily damaged. Veh.#1 was a new vehicle with good tires. Two passengers were transported to sharon hospital for cuts stiffness. No serious injuries.
Not only was there heavy damage to the steel guard rail, but also the defendant's jeep sustained a dislocated rear axel and a broken drive shaft. Likewise, a rear seat passenger, Tristan Baun sustained a fractured ankle. In the collison, the plaintiff was thrown into the front windshield causing substantial damage to the glass. The physical evidence leads to the conclusion that the defendant was operating at an unreasonable speed in view of the obvious weather conditions and failed to have his vehicle under reasonable and proper control.
As a result of striking the windshield, the plaintiff sustained a severe injury to her neck. She was transported to the Sharon Hospital where a bilateral facet fracture (C71 and C6-C7) with cervical radiculopathy was diagnosed. On the morning of November 28th, she was transported to the Hartford Hospital. At the Hartford Hospital, the plaintiff was placed in a halo brace by surgical screws to immobilize the C7 fracture. She was discharged with home care on December 1, 1994. The plaintiff continued in the halo brace until January 18, 1995.
Both Dr. Onyiake, a neurologist and Dr. Druckemiller, recommended surgery but the plaintiff resisted surgical intervention. Another neurologist, Dr. Calderon also recommended surgery. If the plaintiff elects surgery at some future time, the cost would be approximately $13,000.00. Mrs. O'Brien treated conservatively with Dr. Andrew Goldman, D.O. from February 23, 1995 to July 16, 1996.
On October 17, 1995, the plaintiff had a seizure in which she CT Page 1451 passed out. While she believes this episode was related to the accident, Dr. Finklestein stated in his report of October 20, 1995, "it is not clear why she had the unconsciousness episode. Based upon this evidence, damages for this incident may not be considered.
On July 1, 1998, Dr. Druckemiller rendered his opinion that Mrs. O'Brien has a 15% permanent partial disability of the cervical spine. On July 16, 1998, Dr. Goldman estimated the permanency at 25% "based upon objective measures of impairment as noted by physical exam and radiologic evaluation. This number 25%, also takes into account the type of work that this patient is involved in." His prior estimate of permanency as of September 12, 1995 was 15%. The plaintiff was examined by Dr. Frank H. Schilden. On January 12, 1998 who found the permanency to the cervical spine to be 5%. Based upon the evidence including the medical reports, the testimony of the plaintiff and observation of the plaintiff in the courtroom, the undersigned accepts the opinion of Dr. Druckemiller of 15% permanent partial disability of the cervical spine. The plaintiff had no significant improvement in her neck and right arm symptoms since her last visit to Dr. Goldman in September of 1995. She continues to suffer from decreased cervical range of motion rotating to the right. She also has sensory deficits in her right thumb and index finger as well as slightly dull sensation over the fingers of the left hand.
The plaintiff claims medical expenses as follows:
 Hilary Onyike, MD Hartford Hospital Professional Services
 11/28/94, 11/29/94, 11/30/94............985.00 11/28/94.................................50.00
Sharon Hospital, Inc.
11/27/94, 11/28/94......................931.45
Salisbury, PNHA
 12/2/94-12/5/94.........................388.00 12/2/94.................................194.00
Jefferson Xray Group CT Page 1452
 1/18/95.................................131.00 7/18/95.................................131.00
 Stephen Calderon, MD Neurosurgical Associates, PC
1/26/95.................................160.00
William Druckemiller, MD
1/26/95.................................150.00
L.H. Radiologists
2/16/95.................................137.00
Andrew Goldman, DO
2/23/95-9/18/95.......................3,411.00
Lenox Hill Hospital
2/13/95.................................468.00
Sharon Radiology Ass.
11/27/94 (Dr. Crawford).................230.00
Hospital Radiologists
 11/28/94, 11/29/94, 11/30/94..........1,547.00 12/20/94................................124.00 6/22/98.................................319.00
Hartford Hospital
 11/28/94..............................9,293.34 12/20/94................................558.80 6/22/98.................................585.00
 Arnold Rossi, MD Neurosurgeon of Central Conn.
7/18/97.................................265.00 CT Page 1453
Nordicare Physical Therapy
9/28/95, 10/5/95........................157.00
EKG Readers
1/28/94..................................45.00
Salisbury Pharmacy, Inc.
 12/01/94, 12/05/94, 12/21/94, 12/21/94, 12/28/94.......................63.03
Campion Ambulance
11/28/94................................503.60
Hospital Bed Rental
12/02/94................................161.76
Home Health Aid............................4,900.00
Continued Home Services......................500.00
The plaintiffs work as the proprietor of a restaurant and tea importing business which she began in March of 1988 and which, following the November of 1994 auto accident, she reopened for business in the early Spring of 1995. Despite Federal individual tax returns from 1990 through 1995 which show for every year no W-2 salary, no officer compensation income, and no business gain income to the plaintiff, and Federal corporate tax returns for her business from 1988 through 1995 which show for every year total deductions exceeding total income, a negative taxable income even before taking the available net operating loss deduction and absence of officer compensation payments to O'Brien, the plaintiff makes a lost earnings claim in the amount of $592,000.00 based upon the economic analysis of her retained expert. In addition to affirming the aforementioned data manifested in the plaintiff's individual and corporate tax returns, the economic expert admitted in sworn testimony this his review of the corporate tax returns, the business's operating statement and balance sheet have caused him to form opinions that the plaintiff's business is not realistically salable and has no CT Page 1454 value in the marketplace because there are no substantial assets and no documented earnings stream from the business. The plaintiff s economist has testified that the $592,000.00 lost earnings analysis is based upon an estimated annual earning capacity for the plaintiff of $40,000.00. However, the economist also admitted under oath that: (1) he obtained the $40,000.00 figure from plaintiff's counsel; (2) the $40,000.00 figure was not one of his calculations but was used by him as an assumption in his analysis after it was furnished by counsel; (3) to his knowledge there was no independent third-party analysis to verify the validity of counsel's $40,000.00 figure; (4) the $40,000.00 figure represented the alleged value of the benefits from the business food, use of building and car, child care derived by the plaintiff rather than any W-2 income; (5) there were no W-2 earnings or other documented non-W2 compensation for the plaintiff from her business during 1990-1995 (the years of available individual tax returns); (6) only the building-related expenses are documented on the corporate tax returns; (7) he has no specific knowledge about the benefits derived by the plaintiff from her business and never spoke to anybody besides counsel including the plaintiff, about her employment or earnings history; and (8) he has only performed two lost earnings analyses in his fifteen years of consulting work, both being personal injury action lost earnings claims referred for analysis by the same attorney. Based upon this evidence, the arbitration rejects the claims for lost earnings.
The plaintiff testified that prior to her accident, she was athletically active participating in tennis, water skiing, bicycling, and other sport activities. She states that she is no longer able to pursue these activities due to her physical condition and resulting pain. Mrs. O'Brien is 42 years old and has a life expectancy of 38.7 years to live with pain and disability.
The undersigned finds the issues for the plaintiff, Mary O'Brien and further finds that she should receive damages as follows:
Economic Damages: $ 26,388.98
Non-Economic Damages:
Pain and suffering: $150,000.00 CT Page 1455
Permanency and Scaring $100,000.00
Loss of Life's Enjoyment: $100,000.00
Judgment may enter for the plaintiff in the grand total amount of $376,388.98.
BY THE COURT
___________________________ HON. WALTER M. PICKETT Judge Trial Referee